UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JON C. LEWIS, JOHN                                    PLAINTIFFS
BROWN, BRAD PATRIDGE, BARRY
BEAN AND TIM GARDNER

VS.                          CIVIL ACTION NO. 3:13CV92TSL-JMR

PAT ROBERTSON, IN HER OFFICIAL CAPACITY,              DEFENDANTS
AS STATE SOCIAL SECURITY ADMINISTRATOR;
HINDS COUNTY, MISSISSIPPI; AND RANKIN
COUNTY, MISSISSIPPI

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendant Pat
Robertson to dismiss pursuant to Rule 12(b)(1) and (6) of the
Federal Rules of Civil Procedure.  Plaintiffs Jon C. Lewis, John
Brown, Brad Patridge, Barry Bean and Tim Gardner have responded to
the motion, and have further moved for leave to amend their
complaint "as an extra precautionary measure" in order to more
fully set forth their position and cure any pleading deficiencies.
The court, having considered the parties' memoranda in support of
and in opposition to these motions, concludes that the motion to
amend should be denied and that Robertson's motion to dismiss
should be granted.

Plaintiffs Lewis and Brown are elected constables in Hinds
County, Mississippi, and plaintiffs Partridge, Bean and Gardner
are elected constables in Rankin County, Mississippi.  Their
complaint in this cause relates to defendants Hinds and Rankin
Counties allegedly incorrectly classifying them as "independent
contractors" rather than as "employees" for fee-based income

plaintiffs receive for services they render to members of the public.  They complain that as a result of this improper classification, they have suffered and continue to suffer adverse tax consequences.  In addition to suing Hinds and Rankin Counties, plaintiffs have named as a defendant Pat Robertson, in her official capacity as State Social Security Administrator.  In her motion to dismiss, Robertson argues that plaintiffs lack standing to pursue any claim against her as the relief they seek is beyond the scope of her responsibilities or duties as State Social Security Administrator, and further that the injunctive relief they seek against her does not fall within the <u>Ex Parte Young</u> exception to Eleventh Amendment immunity since plaintiffs have not identified any ongoing violation of federal law by Robertson.  In the court's opinion, Robertson is correct on both points.

Under Mississippi law, constables derive their income from two sources:  a direct payment of $1,800 from their respective counties, <u>see</u> Miss. Code Ann. § 25-7-27(1)(f)[1], and fees received from the public which pass through the county treasury, § 25-7-27(1)(a-e).[2]  According to the complaint, while Hinds County and

---

[1]   That provision states that constables are to receive $1,800 annually, payable out of the county treasury, "[f]or serving all warrants and other process and attending all trials in state cases...."  Miss. Code Ann. § 25-7-27(1)(f).

[2]   Mississippi Code Annotated § 19-19-5(1) sets forth a list of constables' duties and responsibilities within their counties, including serving process, serving warrants,

Rankin County classify plaintiffs as county employees for purposes of the $1,800 direct payment and issue plaintiffs a Form W-2 for this income, they treat plaintiffs as self-employed and issue a Form 1099-MISC for purposes of plaintiffs' fee-based income. Plaintiffs contend that their fee-based income meets the definition of "wages" under the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3103 *et seq.,* and the Internal Revenue Code, 26 U.S.C. § 1 *et seq.*,[3] and that Hinds and Rankin Counties' failure to report this income as "wages" and instead classifying plaintiffs as independent contractors and issuing them 1099-MISCs for this income,[4] has resulted in an increased tax burden on them.

---

transporting criminal defendants, serving as bailiff and collecting delinquent criminal fines. Section 25-7-27 lists the fees constables are entitled to receive for these services, which fees are to be paid "out of the county treasury."

[3]    Social Security payroll taxes are collected under the authority of the Federal Insurance Contributions Act (FICA), 26 U.S.C. § 3103 *et seq.* FICA (which is included in the Internal Revenue Code) requires employees and employers to pay Social Security taxes on all "wages" employees receive, 26 U.S.C. §§ 3101(a), 3111(a), and defines "wages" to include "all remuneration for employment," § 3121(a). FICA defines "employment" as "any service ... performed ... by an employee for the person employing him," § 3121(b).
    For purposes of income taxes, the Internal Revenue Code similarly defines "wages" as "all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash...." 26 U.S.C. § 3401.

[4]    Whereas a W-2 is issued for an employee's "wages," a Form 1099-MISC reflects that the payer treats the recipient "as a self-employed worker, also referred to as an independent

3

A basic understanding of FICA, and its applicability to State and local government employees, is needed to place plaintiffs' claims in context.  FICA is a taxing statute, designed to fund the government's overall obligations in the areas of old-age, disability, survivors, and Medicare insurance.  <u>Salazar v. Brown</u>, 940 F. Supp. 160, 163 (W.D. Mich. 1996).  In <u>Salazar</u>, the court explained that

> [FICA] is but one part of the immensely complicated and interrelated system of statutes and regulations that make up the federal social welfare program.  The Social Security Act, 42 U.S.C. §§ 401, *et seq.*, establishes a federal insurance scheme for the benefit of the aged, blind and disabled and their dependents.  FICA is one of the taxing statutes designed to fund the program set up by the Social Security Act.  Pursuant to the requirements of FICA, employees and their employers are liable for certain employment taxes to support the Social Security and the Medicare systems....

940 F. Supp. at 162-163.

> [T]he FICA tax consists of two components: a tax to fund "[o]ld age, survivors, and disability insurance" (commonly known as Social Security) and a tax to fund "hospital insurance," (commonly known as Medicare).  26 U.S.C. § 3101(a); id. § 3101(b)(1); <u>see</u> <u>United States v. Cleveland Indians Baseball Co.</u>, 532 U.S. 200, 205, 121 S. Ct. 1433, 149 L. Ed.2d 401 (2001).  Both components of the tax are imposed only on "wages" received by a taxpayer "with respect to employment." 26 U.S.C. § 3101(a); id. § 3101(b)(1).  The Code defines "wages" for this purpose as "all remuneration for employment,

---

contractor," and "has determined that an employer-employee relationship does not exist."  <u>Lewis v. ASAP Land Express, Inc.</u>, 554 F. Supp. 2d 1217, 1221 (D. Kan. 2008) (citing  Frequently Asked Tax Questions And Answers, http://www.irs.gov/faqs/faq-kw 5.html (last visited Mar. 18, 2008)).

including the cash value of all remuneration (including benefits) paid in any medium other than cash."  <u>Id.</u> § 3121(a).

<u>Gerstenbluth v. Credit Suisse Securities (USA) LLC</u>, Docket No. 12-4125-cv, 2013 WL 4516660, 2 (2d Cir. 2013).  The Tenth Circuit has summarized the FICA tax scheme, as it applies to employees, as follows:

> The federal Social Security and Medicare systems are funded by excise taxes, separate and distinct from federal income taxes, imposed on employees, employers, and self-employed individuals.  <u>See</u> 26 U.S.C. §§ 1401, 3101, 3111.  In the case of employees and employers, FICA imposes the excise tax on the "wages" paid by an employer to an employee with respect to "employment." <u>See</u> 26 U.S.C. § 3101(a)-(b), § 3111(a)-(b).  FICA taxes are paid in equal shares by employer and employee.  <u>See id.</u>  In general, all payments of remuneration by an employer for services performed by an employee are subject to FICA taxes, unless the payments are specifically excepted from the term "wages," or the services are specifically excepted from the term "employment."

<u>Public Employees' Retirement Bd. v. Shalala</u>, 153 F.3d 1160, 1161 (10th Cir. 1998).  Thus, the employer is required to withhold and remit the employee tax and to remit an equal amount as an employer excise tax on the covered wages of all persons who qualify as "employees," as that term is defined by FICA.

While wages paid to employees are subject to FICA taxes which must be paid by the employer, independent contractors are not subject to the FICA tax but are instead covered by the Self-Employment Contributions Act (SECA), 26 U.S.C. §§ 1401 *et seq.,* which requires that they pay self-employment taxes on their income

to cover their own Social Security and Medicare costs.  <u>Gifford v.</u>
<u>Meda</u>, No. 09-cv-13486, 2010 WL 1875096, 11 (E.D. Mich. May 10,
2010).  "The SECA tax is a different tax from the FICA tax, though
the SECA tax contains the same two components as the FICA tax.
The SECA rate is equal to the sum of the employer and employee tax
rates under FICA."  <u>Jones v. C.I.R.</u>, No. 18719-05, 2007 WL
2417271, 2 (U.S. Tax Ct. Aug. 27, 2007).[5]  Thus, in effect, a
self-employed person pays both the employer and employee portions
of the tax (but only on his net income from self-employment).
<u>United States v. Bailey</u>, 789 F. Supp. 788, 805 (N.D. Tex. 1992)
(citing 26 U.S.C. §§ 1401(a), 1402).  <u>See also</u> <u>Umland v. PLANCO</u>
<u>Financial Servs., Inc.</u>, 542 F.3d 59, 61 (3d Cir. 2008) (explaining
that SECA imposes the equivalent of the sum of the employee and
employer FICA taxes for employees); <u>Walker v. United States</u>, 202
F.3d 1290, 1291 (10th Cir. 2000) (explaining that the SECA tax "is
designed to finance social security benefits paid to self-employed
individuals," and complements the FICA tax imposed pursuant to 26
U.S.C. §§ 3101(a) and 3121(a) on wages earned by an employee)

---

[5]     Section 1401(a) "impose[s] for each taxable year, on the
self-employment income of every individual, [an old-age,
survivors, and disability insurance] tax equal to" 12.4 percent
during taxable years beginning after December 31, 1989.  26 U.S.C.
§ 1401(a).  Section 1401(b) "impose[s] for each taxable year, on
the self-employment income of every individual, a [hospital
insurance] tax equal to" 2.9 percent during taxable years
beginning after December 31, 1985.  <u>Id.</u> § 1401(b).  The sum of
these two taxes yields a total self-employment tax of 15.3
percent.

(quoting <u>Schelble v. Comm'r</u>, 130 F.3d 1388, 1391 (10th Cir. 1997)).

When the Social Security Act was originally enacted in the 1930s, state and local government employees were excluded from Social Security coverage because there was a question as to whether Congress could constitutionally compel the States and their political subdivisions to include their employees in the Social Security system.  <u>Bowen v. Public Agencies Opposed To Social Sec. Entrapment</u>, 477 U.S. 41, 44, 106 S. Ct. 2390, 91 L. Ed. 2d 35 (1986).  However, since many governmental employees did not have their own retirement system, the Social Security Act was amended in 1950 to add Section 218, codified at 42 U.S.C. § 418, which allowed States and local governments to enter into agreements with the Social Security Administration (SSA) to voluntarily extend Social Security coverage to designated state and local government employees who were not covered by a retirement system.[6]  In 1954, the Act was amended to allow States

---

[6]     The Court in <u>Bowen</u> explained:
Section 418 authorizes voluntary participation by States in the Social Security System.  Under § 418(a), States may obtain coverage for their employees and employees of their political subdivisions, enrolling all or only specified "coverage groups" of workers.  42 U.S.C. § 418(a)(1) (1982 ed., Supp. II); <u>see</u> § 418(b)(5) (defining coverage group).  States enter the System by executing "an agreement" (§ 418 Areement) with the Secretary of Health and Human Services (Secretary).  While § 418 gives States some authority over the content of the Agreements, i.e., States may identify the covered

to extend coverage even to public employees who were covered by a public retirement system, if the employees voted to have coverage.

In 1986, Medicare coverage became mandatory for all State and local government employees hired or rehired after March 31, 1986, whether or not such employees were covered by a Section 218 Agreement.[7]  And beginning July 2, 1991, Social Security and Medicare coverage became mandatory for all State and local government employees who are not members of a public retirement system and who are not covered under a Section 218 agreement.

Therefore, even where a 218 Agreement between a state or local government and the Social Security Administration does not cover services performed by an employee of the governmental unit, such employees are still generally entitled to full coverage under the Social Security Act, i.e., Social Security and Medicare coverage, and subject to compliance with FICA if the employee is not a member of the governmental entity's retirement system.  26 U.S.C. § 3121(b)(7)(F); 20 C.F.R. § 404.1020.[8]  In contrast to

_____

employees, the provisions of a § 418 Agreement are required to be "not inconsistent with the provisions of" § 418.  § 418(a)(1).
Bowen v. Public Agencies Opposed To Social Sec. Entrapment, 477 U.S. 41, 45, 106 S. Ct. 2390,  91 L. Ed. 2d 35 (1986).

[7]     All but one of the plaintiffs, Brown, was hired after March 31, 1986.

[8]     A public retirement system is defined as "any pension, annuity, retirement or similar fund or system that is maintained by a state, political subdivision or instrumentality thereof" that provides a retirement benefit comparable to the benefit provided

8

Social Security coverage, Medicare coverage extends to *all* employees, including State and local government employees, whether or not such employees are covered by a Section 218 Agreement and whether or not part of a public retirement system.  Thus, employees of a state or local government who are not covered by a 218 Agreement but who are members of a public retirement system, are not covered by Social Security but they are entitled to Medicare coverage.

Here, although both Hinds County and Rankin County have executed Section 218 Agreements, each county specifically elected to exclude constables from the Agreement and subsequent coverage of Social Security by way of "Order(s) Excluding Justices of the Peace and Constables from Social Security coverage through the Public Employees' Retirement System of Mississippi."  Furthermore, as plaintiffs, with regard to their fee-derived income, are regarded by their respective counties as independent contractors and not employees, the counties are not remitting to the IRS the employers' portion of the FICA tax to cover Medicare.  Instead, these plaintiffs are paying what equates to the employer and employee portion of the Medicare tax via the SECA tax.

The gravamen of plaintiffs' complaint in this case is that, with respect to their fee-based income, Hinds and Rankin Counties

---

under the Social Security portion of the Social Security Act.  26 C.F.R. § 31.3121(b)(7)-2(e); 42 U.S.C. § 418(b)(4).

have misclassified them as independent contractors, rather than
employees, and thereby deprived plaintiffs of the employer portion
of contributions required under the FICA.  They claim that such
"improper treatment of [their] earnings ... as subject to
self-employment taxes, rather than wages subject to FICA, erodes
[their] right to coverage under the Social Security Act as
employees of a political subdivision of the State of Mississippi
[and] impedes [their] ability to plan for their retirement needs."
Notably, plaintiffs do not allege, either in their original or in
their proposed amended complaint, that they have been deprived of
the Social Security portion of employer contributions under FICA.
That is, they do not allege that they are eligible for Social
Security coverage.  They do not allege that they are covered by a
Section 218 Agreement,[9] and they do allege that they are covered

---

        [9]     In the original complaint, plaintiffs plainly
acknowledged they were excluded from coverage under the Section
218 Agreement and were covered under the PERS, and as such, were
not entitled to Social Security coverage.  In their proposed
amended complaint, plaintiffs allege the following:
        Based on advice of the [State Social Security
        Administrator] SSSA and/or the counties, the Plaintiffs
        are not eligible for full coverage under the Social
        Security Act through voluntary agreements entered by
        Hinds County, Mississippi and Rankin County,
        Mississippi, as there was a modification excluding
        constables from coverage in the 1960s.  However, issues
        regarding the validity of the exclusion from the 218
        Agreement ... remain to be determined.
Plaintiffs' vague reference to "issues regarding the validity of
the exclusion from the 218 Agreement" is meaningless.  They do not
allege that the modifications excluding constables from coverage
of the Section 218 Agreement *are* invalid or suggest any basis,

by Mississippi's public employees' retirement system, PERS.[10]
Thus, plaintiffs acknowledge, implicitly if not explicitly, that
they are not covered by Social Security; and accordingly they do
not contend that their alleged misclassification as independent
contractors has deprived them of the employer portion of the
*Social Security component* of the FICA tax.  Rather, they allege
that they have "incurred financial burdens stemming from ... the
counties' failure to contribute their share of *the Medicare tax*."
(Emphasis added).

Defendant Robertson is Mississippi's State Social Security
Administrator and is sued in her official capacity as such.
Social Security regulations require that each state designate an
official to act for the state in administering that state's

_____

factual or legal, for questioning the validity of the exclusion of
constables from coverage.

[10]    Under Mississippi law, a political subdivision must
enter into a joinder agreement with PERS in order to provide
public pension coverage to its employees.  See Miss. Code Ann.
§ 25-11-105(f).  Plaintiffs explicitly allege (in both their
original and proposed amended complaints) that Hinds County and
Rankin County elected to cover constables under PERS prior to
plaintiffs' beginning service.  Moreover, in their original
complaint, plaintiffs expressly alleged that "[i]n Mississippi
[PERS] is the designated retirement system providing ...
comparable benefits" to the benefit provided by Social Security.
In their proposed amended complaint, plaintiffs omit the
specific allegation that PERS provides comparable benefits to
those provided by Social Security and instead, they vaguely allege
that "issues regarding ... the comparability of benefits provided
under PERS remain to be determined."  However, plaintiffs do not
identify any such "issues" nor do they allege or suggest any facts
which might support an assertion that PERS does not provide
comparable benefits to Social Security.

Section 218 Agreement.  In general, this official, the State
Social Security Administrator, acts for the state with respect to
its responsibilities for maintaining and administering the
provisions of the State's Section 218 Agreements and the proper
application of Social Security and Medicare.  <u>See</u> 20 C.F.R.
§ 404.1204.

In her motion to dismiss, Robertson argues that plaintiffs
lack standing to pursue any claim against her as plaintiffs do not
identify any injury that may be found to be the result of any act
or omission by her as the State Social Security Administrator.[11]
That is, she maintains that her responsibilities as the State
Social Security Administrator do not include rendering tax advice
or employee classification advice unrelated to a Section 218
Agreement; and she concludes that since plaintiffs' constable
services are not covered by the Section 218 Agreement entered into
by Hinds and Rankin Counties, then plaintiffs cannot have suffered
any harm as the result of any action or inaction by her as the
State Social Security Administrator.  The court agrees.

---

[11]    While Robertson has purported to file her motion under
Rule 12(b)(6), she plainly challenges plaintiffs' constitutional
standing.  The Fifth Circuit has held that while a dismissal for
lack of prudential or statutory standing is properly granted under
Rule 12(b)(6), "a dismissal for lack of constitutional standing
... should be granted under Rule 12(b)(1)."  <u>Harold H. Huggins
Realty, Inc. v. FNC, Inc.</u>, 634 F.3d 787, 795 n.2 (5th Cir. 2011).

To establish Article III standing, plaintiffs must show "'an injury-in-fact caused by a defendant's challenged conduct that is redressable by a court.'"  Dept. of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Com'n, 727 F.3d 415, 419 (5th Cir. 2013) (quoting K.P. v. LeBlanc, 627 F.3d 115, 122 (5th Cir. 2010)).  In the face of Robertson's challenge, the burden is on plaintiffs to show that standing is proper.  See Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc., 702 F.3d 794, 800 (5th Cir. 2012) ("This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence.") (internal quotation marks and citation omitted).

There is nothing in plaintiffs' original or proposed amended complaint to suggest or support a conclusion that Robertson made the decision to classify plaintiffs as independent contractors rather than employees, and plaintiffs otherwise have failed to support their intimation that her responsibilities as the State Social Security Administrator encompass determinations as to the proper classification of workers as employees or independent contractors.  In her motion and accompanying brief, Robertson insists that as the State Social Security Administrator, she only "acts for the state with respect to the initial Section 218 Agreement and modifications, the performance of the state's

13

responsibilities under the Agreement, and in all state dealings concerning the administration of the Agreement." In short, her role is exclusively limited to matters related to Section 218 Agreements. Elaborating, she asserts that primarily, her duties are to negotiate, administer and maintain the Section 218 Agreements and modifications; resolve coverage and taxation questions related to the Agreements; and provide information to state and local public employers with 218 Agreements in accordance with the Social Security Act. See Federal-State Reference Guide, Publication 963, Catalog Number 21843B Dept. of the Treasury Internal Revenue Service (Rev. 11-2012). And she asserts that her only role with respect to the plaintiff constables would be to verify to Hinds County and Rankin County that plaintiffs are excluded from Social Security coverage under their respective Section 218 Agreements but are covered under Medicare if they were hired or rehired after March 31, 1986. She submits that she has already fulfilled her duties under this role.

Plaintiffs contend that the State Social Security Administrator's responsibilities are broader than claimed by Robertson and cite as support the Program Operations Manual System (POMS) issued by the Social Security Administration, which sets forth the "Responsibilities of State Social Security Administrators." POMS SL 10001.130 B states:

B. Responsibilities of State Social Security Administrators

14

SSA regulations require that each State designate a state administrator, to act on the State's behalf with respect to its responsibilities for maintaining and administering the provisions of the Section 218 Agreement.

1. Administer Section 218 coverage
The state administrator is responsible for administering all aspects of Section 218 coverage, including interpreting its provisions, and insuring proper application of Social Security coverage to all State and political subdivision employees.  The basic responsibilities of the state administrator are to:

a.  Permanently maintain physical custody of the following documents:
    Section 218 Agreements, modifications, dissolutions, intrastate agreements, ballots from referenda and, prior letters and other forms of correspondence between the entities and the State, SSA, and IRS, which could affect future coverage;

b.  Determine which State and political subdivision employees' positions are covered by approved Section 218 Agreements and modifications;

c.  Work with employers to guarantee proper Social Security and Medicare withholding and reporting;

d.  Take appropriate steps with respect to the execution of modifications to the original agreement to include additional coverage groups, correct errors in coverage, or identify additional political subdivisions that join a covered retirement system;

e.  Conduct referenda on the coverage of services of individuals in positions under a retirement system;

f.  Identify new, inactive, merged or dissolved political subdivisions, and take the appropriate coverage related action;

g.  Provide SSA with notice and evidence of the legal dissolution of covered State or political subdivision entities;

15

h.   Provide guidance to government employers on issues related to Section 218 coverage;

i.   Work with SSA and the IRS to address coverage and taxation questions related to the Agreement and any modifications; and

j.   Serve as an intermediary for federal, State and local agencies, and educate public employers on coverage and benefit issues.

Although plaintiffs suggest otherwise, these responsibilities are obviously limited to Section 218 Agreements.  Plaintiffs point out that POMS identifies another responsibility of the State Social Security Administrator to be "providing regular education and outreach to State and political subdivision employers and employees," and lists as an example of such outreach taking steps "to ensure that [a political] subdivision understands [its] obligations and responsibility under mandatory Social Security or mandatory Medicare laws and provisions."[12]  And they note that additional guidance provided by the Social Security Administration indicates that the State Social Security Administrator is to "provide[] advice on Section 218 optional exclusions applicable to

_____

[12]      According to POMS, State Social Security Administrators are also to "[n]otify SSA about any state administrator changes"; "[c]ommunicate with SSA, IRS, employers, and stakeholders"; "[m]aintain Section 218 related records"; "[d]etermine necessary funding" for "operating the Section 218 coverage program"; "[d]etermine necessary staffing" levels "commensurate with Section 218 program objectives and activities"; "[u]nderstand (the) legal framework" for "making a determination on coverage issues"; and "[d]evelop[] a comprehensive program strategy for addressing the State's Section 218 program goals."  POMS SL § 10001.130 B.  All these responsibilities relate to Section 218 Agreements.

State and/or individual modifications, and advice on State and local laws, rules, regulations and compliance concerns."  SSA Guide on Social Security and Medicare Coverage for State and Local Government Employees, http://www.ssa.gov/section218training/documents/Resource_9.doc (last visited Oct. 17, 2013).

However, nothing in any of the materials cited by plaintiffs indicates that the State Social Security Administrator is responsible for the determination whether a worker is an employee or an independent contractor.  In fact, the Social Security Administration has stated that this is the responsibility of the governmental entity for which services are performed.  In its publication, State and Local Government Employers – Information, under the heading "Introduction to the Key Representatives," the Social Security Administration states that "[t]he primary employer responsibilities include:  Properly classify[ing] workers as independent contractors or employees...."  http://www.ssa.gov/section218training/basic_course_5.htm (last visited Oct. 17, 2013).

While plaintiffs complain they have not been accorded proper treatment with respect to withholding and employer payment and remittance for Medicare coverage, their alleged injury in this regard stems not from improper guidance or advice rendered by Robertson as to FICA coverage for employees.  Rather, the harm plaintiffs claim in this cause flows solely from their alleged

improper classification by Hinds and Rankin Counties as independent contractors rather than employees.  Plaintiffs do not allege that Robertson made the determination that plaintiffs' fee income does not constitute "wages."  Moreover, as is clear from the foregoing, her responsibilities as the State Social Security Administrator do not include rendering employee classification advice unrelated to a Section 218 Agreement.

If plaintiffs were classified as employees, they would not be covered by Social Security since they are (1) not covered by the County defendants' 218 Agreements and (2) are covered by PERS.  If classified as employees, they would be entitled to Medicare coverage; but there is nothing in the complaint or proposed amended complaint to indicate that Robertson failed to apprise the County defendants that Medicare coverage is mandatory for all employees or that the County defendants were otherwise uninformed or misinformed as to the mandatory nature of Medicare coverage.

Plaintiffs seem to suggest that their misclassification as independent contractors is somehow attributable to Robertson because she failed to provide adequate or proper advice and guidance to the County defendants and/or failed to pursue and facilitate a resolution of the issue of plaintiffs' classification with the Social Security Administration and Internal Revenue Service.  Ultimately, however, it is County defendants' decision that has caused the harm for which plaintiffs seek redress, and

not any act or omission of Robertson.  Their claimed injury – – the alleged adverse tax consequences stemming from the Counties' failure to accord them "employee" status for their fee income and the Counties' consequent failure to make proper withholdings and payments for Medicare taxes – is the result of the County defendants' having improperly classified them as independent contractors and treated them as such for tax purposes.  This is not fairly traceable to Robertson.

Furthermore, "[f]or a plaintiff's claim to be redressable," – a requirement of standing – "it must be likely, as opposed to merely speculative, that a favorable decision will redress the plaintiff's injury." Dept. of Texas, VFW, 727 F.3d at 419 (internal quotation marks and citation omitted).  "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." Id. (internal quotation marks and citation omitted).  The relief plaintiffs demand in their original complaint is an order "[d]eclaring that the Plaintiffs are subject to no more than the Medicare portion of FICA," "enjoining the State Social Security Administrator from issuing guidance inconsistent with the outcome of this proceeding," and "[e]njoining Hinds County ... and Rankin County ... from taking action inconsistent with the outcome of this proceeding."  In the proposed amended complaint, they similarly seek an order "[d]eclaring the responsibilities and

obligations of the government employers with regard to FICA and reporting the Plaintiffs' earnings," "[e]njoining Hinds County, Mississippi and Rankin County, Mississippi, from taking action in violation of the Plaintiffs' entitlement to coverage under the Social Security Act," and "[e]njoining the State Social Security Administrator from taking action or issuing guidance in violation of the Plaintiffs' entitlement to coverage under the Social Security Act."  In effect, plaintiffs ask this court to declare that plaintiffs are not independent contractors but rather employees of the defendant Counties and to enjoin the Counties to treat them as such for purposes of FICA withholdings, and to enjoin Robertson, as the State Social Security Administrator, from advising Hinds and Rankin Counties to act in contravention of the court's order.  It bears repeating that Robertson has neither the responsibility nor the authority to make the determination as to whether plaintiffs are employees or independent contractors.  *At most*, she may provide the Counties with advice and guidance on the issue (and in the court's view, even that is not her responsibility); but the Counties would not be bound by her advice or guidance.  Thus, the relief plaintiffs seek as to Robertson is illusory; plaintiffs' injury would not be redressed even if the court were to grant the relief plaintiffs purport to seek as to Robertson.  It follows that they lack standing to pursue any claim against her.

Robertson further argues in her motion that in addition to the lack of standing, plaintiffs' claim is due to be dismissed as she has Eleventh Amendment immunity from suit and liability on plaintiffs' request for prospective injunctive relief against her since defendants cannot establish a continuing violation of federal law.  The Fifth Circuit recently summarized the applicable principles as follows:

> The Eleventh Amendment proscribes federal court review of "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  The proscription also applies to suits by a citizen against her own state.  A suit is not "against" a state, however, when it seeks prospective, injunctive relief from a state actor, in her official capacity, based on an alleged ongoing violation of the federal constitution.  That principle, the Ex Parte Young rule, "is based on the legal fiction that a sovereign state cannot [authorize an agent to] act unconstitutionally."

K.P. v. LeBlanc, – F.3d –, 2013 WL 4746488, 7 (5th Cir. 2013).[13]  In an earlier opinion in the same case, the court elaborated on the Ex Parte Young rule, stating:

> In order to use the Ex Parte Young exception, a plaintiff must demonstrate that the state officer has "some connection" with the enforcement of the disputed act.  The connection requirement exists to prevent litigants from misusing the exception. There are plenty of state actors.  A plaintiff must show that the defendant state actors have the requisite "connection" to the statutory scheme to remove the Eleventh Amendment

---

[13]   Eleventh Amendment immunity may be abrogated by Congress or waived by the State, but as Robertson correctly notes, neither has occurred in this case.  Plaintiffs do not contend otherwise. Thus, the sole issue with reference to Robertson's assertion of immunity is whether the Ex Parte Young exception applies.

> barrier to suits brought in federal court against the
> State.
>
>     <u>Ex Parte Young</u> gives some guidance about the
> required "connection" between a state actor and an
> allegedly unconstitutional act.  "The fact that the
> state officer, by virtue of his office, has some
> connection with the enforcement of the act, is the
> important and material fact, and whether it arises out
> of the general law, or is specially created by the act
> itself, is not material so long as it exists."  <u>Ex Parte</u>
> <u>Young</u>, 209 U.S. at 157, 28 S. Ct. 441.
>
> [T]he state actor must be connected with an act's
> "enforcement" for the exception to apply.  <u>Ex Parte</u>
> <u>Young</u>, 209 U.S. at 157, 28 S. Ct. 441.  "Enforcement"
> typically involves compulsion or constraint.  <u>Webster's</u>
> <u>Third New International Dictionary</u> 751 (1993).

<u>K.P. v. LeBlanc</u>, 627 F.3d 115, 124-125 (5th Cir. 2010) (additional

quotation marks and citations omitted).

    Robertson points out that the only arguable violation of

federal law plaintiffs have identified is the misclassifying and

misreporting of plaintiffs' employment status for employment tax

purposes by Hinds County and Rankin County.[14]  As noted <u>supra</u>, even

if plaintiffs have been misclassified, Robertson, as the State

Social Security Administrator, has no control over the method or

manner in which plaintiffs are classified for purposes of FICA or

otherwise.  That is, she is not connected with enforcement of the

federal law(s) at issue.  Consequently, <u>Ex Parte Young</u> does not

---

    [14]    In their original complaint, plaintiffs appear to
complain of the adverse FICA *and income tax* consequences of their
classification as independent contractors rather than employees.
Their amended complaint seems to be limited to their alleged
misclassification for FICA reporting and withholding purposes.

apply and she is entitled to Eleventh Amendment immunity, and will be dismissed from the case.

In the process of reviewing Robertson's motion, the court has determined that an issue also exists as to whether plaintiffs have a cognizable claim against the County defendants.  The plaintiffs in <u>Meda v. Gifford</u> attempted to assert a claim under RICO based on allegations that "Defendants' failed to abide by their statutory duty under FICA to classify Plaintiffs as employees and to withhold employment and income tax amounts accordingly."  2010 WL 1875096, at 10.  The court concluded that "a finding that Defendants misclassified Plaintiffs as independent contractors for tax purposes is essential to Plaintiffs' theory and the resolution of such employee misclassification claims has been firmly vested in the comprehensive administrative enforcement scheme embodied in both the Internal Revenue Code ("IRC"), 26 U.S.C. § 1 *et seq*. and the Social Security Act ("SSA"), 42 U.S.C. § 301 *et seq*.," <u>id</u>., and that "[t]he availability of this comprehensive scheme forecloses Plaintiffs' attempt to create a RICO claim notwithstanding the presence of this well-established administrative network of resolution and relief," <u>id.</u>  The court wrote:

> "When an employer misclassifies an employee as an independent contractor, should that employee have the right to sue his employer for failing to withhold and remit payroll taxes to the federal government or should the employee be limited to administrative remedies?" J.

23

> Aaron Ball, <u>The Sea Clammers Doctrine: Reeling In Private Employment Tax Claims In Worker Misclassification Cases</u>, 1 DePaul Bus. & Com. L.J. 215 (2003).  The vast majority of cases that have decided this issue, as well as the Ball article, conclude that the exhaustive regulatory scheme embodied in the IRC, FICA and the SSA for resolution of employee classification claims forecloses a private right of action for such claims under either statute.

<u>Gifford</u>, 2010 WL 1875096, at 10.  The court observed further that "[c]ourts which have concluded that FICA does not provide a private right action have also held that related non-statutory claims, based upon the same misclassification theory, are also foreclosed."  <u>Id</u>. (citations omitted).  Ultimately, the court determined that "[t]he comprehensive social welfare program embodied in the SSA and the IRC forecloses Plaintiffs' claim in the instant case," and that the plaintiffs had only three options for challenging their alleged misclassification:

> (1) Plaintiffs may pursue an action under the SSA to the extent that the alleged mischaracterization affects rights to retirement benefits and judicial review of this determination in the district courts is available (<u>see</u> 42 U.S.C. § 405(c)(4), (5), (8); <u>Salazar</u>, <u>supra</u> at 174, <u>McElwee</u>, <u>supra</u> at 171)[15]; (2) If Plaintiffs have

---

[15]    In <u>Salazar</u>, the court explained:
The Social Security Act creates an express administrative remedy for employees who contend that earnings have not been credited properly to their record for social security purposes.  An employee seeking to establish that he has earned wages that should be credited to his account for social security purposes must proceed administratively before the Secretary of Health and Human Services to correct the employee's earnings record within three years, three months and fifteen days of the year in question. 42 U.S.C. § 405(c)

overpaid under SECA as a result of the
mischaracterization they can seek a refund and if their
claim is denied they can seek review in district court
(see 26 U.S.C. § 6511(a); 28 U.S.C. § 1346(a)); (3)
Plaintiffs may seek a determination of their employment
status by filing a form SS-8, although this is not a
prerequisite to relief on a misclassification claim, and
may file a Form 8919 for "Uncollected Social Security
and Medicare Tax on Wages" (available at
http://www.irs.gov./pub/irs-pdf/f8919.pdf).  "These
statutes do not admit of a third approach, under which
employees and employers would litigate benefit and
taxation issues outside the statutory structure and
without the presence of the very agencies created by
Congress to administer this complicated system."
Salazar, supra at 164.

---

(4), (5).  The agency will investigate the requested
correction and make any necessary changes.  20 C.F.R. §§
404.8020.823.  If the worker is not satisfied with the
Secretary's resolution of this issue, judicial review is
available in the federal district court.  42 U.S.C. §
405(c)(8).  The employer is neither a necessary or
proper party in such proceedings, although the
employer's records may be subpoenaed to provide evidence
on the issue.  42 U.S.C. § 405(d).
940 F. Supp. 160, 163 (W.D. Mich. 1996).
    The Social Security Act creates an express
    administrative mechanism to investigate and decide
    issues concerning a worker's earnings record and his
    receipt of covered wages.  42 U.S.C. § 405(c)(4), (5).
    This mechanism is superintended by the Social Security
    Administration, the largest adjudicatory body on the
    face of the earth, and provides the safeguards of an
    adversary hearing before a professional Administrative
    Law Judge and eventual judicial review.  Likewise, the
    enforcement of FICA tax obligations is entrusted to the
    IRS, which has administrative and judicial remedies
    directly against the employer and corporate officers.
    These statutes do not admit of a third approach, under
    which employees and employers would litigate benefit and
    taxation issues outside the statutory structure and
    without the presence of the very agencies created by
    Congress to administer this complicated system.
940 F. Supp. at 164.

2010 WL 1875096, at 16.  The fact that plaintiffs' complaint herein does not appear to fit within any of these categories raises an issue of whether they have stated a claim upon which relief can be granted and/or whether they have asserted a claim over which this court has subject matter jurisdiction.[16]  The court finds that the parties should be given an opportunity to address these issues.[17]

Accordingly, based on all of the foregoing, it is ordered that Robertson's motion to dismiss is granted, and that plaintiffs' motion to amend is denied.  It is further ordered that

---

[16]  Both issues may be raised by the court *sua sponte*.  See In re Bass, 171 F.3d 1016, 1021 (5th Cir. 1999) (" Federal courts must be assured of their subject matter jurisdiction at all times and may question it *sua sponte* at any stage of judicial proceedings."); Whatley v. Coffin, 496 Fed. Appx. 414, 415 (5th Cir. 2012) ("A district court may sua sponte dismiss a complaint under Rule 12(b)(6) as long as the procedure employed is fair.") (internal quotation marks and citation omitted).

[17]  Plaintiffs have a pending motion to amend their complaint, ostensibly to cure possible pleading deficiencies in their original complaint.  Robertson responded to the motion to amend, asserting it should be denied on the basis of futility, suggesting that the motion to amend is "merely a backdoor attempt to get the same declaratory and injunctive relief (as requested in the original complaint) regarding how their income is reported to the IRS without characterizing it as an action related to a Federal taxes[,]" over which the court would have no jurisdiction. For its part, the court is unable to discern the purpose of the proposed amendment.  It includes few, if any, additional facts, see supra notes 9 and 10, and does little, if anything, to clarify the claims and/or issues raised.  For this reason, the court will deny plaintiffs' motion to file their proposed amended complaint; but this ruling does not foreclose plaintiffs from seeking to amend to more fully identify and/or to clarify the factual and legal bases of their claims herein.

plaintiffs shall submit to the court a memorandum on or before October 31, 2013 identifying the legal basis for their claim(s) herein, including the basis for this court's jurisdiction.  Within fourteen days of plaintiffs' submission, defendants Hinds County and Rankin County may respond and apprise the court of their position with respect to the viability of plaintiffs' claims in light of the issues identified by the court herein.

SO ORDERED this 17th day of October, 2013.


/s/Tom S. Lee
UNITED STATES DISTRICT COURT